UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID G. THOMPSON,

        Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.
_____

16-CV-928-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17).

Plaintiff David G. Thompson ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 13) is granted, the Commissioner's motion (Dkt. No. 14) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## **BACKGROUND**

Plaintiff filed an application for DIB on June 12, 2013. (*See* Tr. 260)[2] Plaintiff indicated that he has been disabled since September 20, 2012 as a result of hearing loss,

---

[1]     The Clerk of Court is directed to amend the caption accordingly.
[2]     References to "Tr." are to the administrative record in this case.

diabetes, diabetic neuropathy, depression, colitis, arthritis, fatigue, high blood pressure, and hepatis C. (Tr. 283). Born on January 3, 1955, plaintiff was 60 years old at the time he appeared for an administrative hearing in this matter. (Tr. 144). Plaintiff's benefit application was initially denied on September 13, 2013. (Tr. 208-09). He sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Donald J. McDougall on April 24, 2015. (Tr. 117). Plaintiff was represented by counsel at the hearing. (Tr. 139-97). The ALJ heard testimony from plaintiff and Jay Steinbrenner, a vocational expert. (*Id.*). On September 8, 2015, ALJ McDougall issued a decision that plaintiff was not disabled under the Act. (Tr. 122-38). Plaintiff sought review of the decision, and the Appeals Council denied his request for review. (Tr. 1-4). ALJ McDougall's September 8, 2015 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed. (Dkt. No. 1).

## **DISCUSSION**

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (WDNY 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

2

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

4

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

   III.   *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Act through December 31, 2016. (Tr. 124). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 20, 2012. (*Id.*). At step two, the ALJ found that plaintiff has severe impairments consisting of diabetes mellitus, diabetic neuropathy, osteoarthritis, ulcerative colitis, and discogenic disorder.[3] (*Id.*). At step three, the ALJ determined that plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments. (Tr. 126-27). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[4] except the claimant must be able to briefly change positions, meaning one to two minutes, every half an hour. The claimant must have a restroom easily available for use during working hours. He can have no more than frequent use of hands and fingers. He can have no ladders, ropes or scaffolds. He cannot kneel or crawl. He can have no more than occasional balancing, stooping, and crouching. He can have no more than occasional stairs or ramps and can have no work around heights or dangerous moving machinery.

---

[3] Plaintiff also alleged the additional impairments of plantar fasciitis, arm pain, hearing loss, hepatitis C, liver disease, hypertension and obesity. (Tr. 125). The ALJ noted, however, that these impairments, considered singularly or together, have caused only transient or mild symptoms, are well controlled with treatment, or do not meet the durational requirement. (*Id.*). Nevertheless, the ALJ indicated that he considered these impairments in formulating plaintiff's residual functional capacity. (*Id.*). The ALJ also noted that plaintiff's mental impairments of depression and substance abuse (which is in remission), do not cause more than minimal limitations in plaintiff's ability to perform basic mental work activities and are therefore non-severe. (*Id.*).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b) and 416.967(b).

6

(Tr. 127-32). Proceeding to step four, the ALJ determined that plaintiff is capable of performing past relevant work as a hotel manager and sales manager. (Tr. 132-33). Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning of the Act from September 20, 2012 through the date of his decision. (Dkt. No. 133).

    IV.    *Plaintiff's Challenges*

Plaintiff first argues that the ALJ failed to give proper weight to the opinion of Dr. Vernon Clifton, his treating physician. (Dkt. No. 13-1).

On August 28, 2014, plaintiff treated with Dr. Clifton for various chronic conditions including alcohol abuse, cirrhosis due to hepatitis C, diabetes, depression, hypertension, joint pain, polyarthritis, and ulcerative colitis. (Dkt. No. 487-94). After a physical examination, Dr. Clifton diagnosed plaintiff with diabetes, insomnia, peripheral neuropathy, hearing loss, and hypertension. (*Id.*). He adjusted the dosage and type of some of plaintiff's prescribed medications. (*Id.*). Plaintiff had a follow-up appointment with Dr. Clifton on November 3, 2014. (Tr. 479-86). Plaintiff complained of pain and numbness in his right arm. (*Id.*). He described the pain as a 7/10 and requested a refill of Ibuprofen, a pain medication, to treat his arthritis. (*Id.*). After a physical examination, Dr. Clifton changed plaintiff's diabetes medication, renewed his Ibuprofen prescription for joint pain, and sent him for an orthopedic evaluation for shoulder pain. (*Id.*).

Plaintiff saw Dr. Clifton again on March 26, 2015. (Tr. 543-48). Plaintiff reported abdominal pain, bloating and cramps, diarrhea and rectal bleeding. (*Id.*). He also complained of joint pain, back pain, and limping. (*Id.*). Dr. Clifton conducted a physical examination. (*Id.*). It was noted that plaintiff was prescribed nine drugs or application devices to treat his diabetes, and that he took additional medications for depression,

7

hypertension, pain as a result of peripheral neuropathy, and ulcerative colitis. (*Id.*). Also on March 26, 2015, Dr. Clifton completed a Medical Examination for Employability Assessment on plaintiff's behalf. (Dkt. No. 453-454). Dr. Clifton opined that plaintiff was moderately limited in walking, standing, lifting, carrying, pushing, pulling, bending, using his hands, and climbing. (*Id.*). He further concluded that plaintiff would be "unable to be mobile at all times" and had "unpredictable toileting" due to ulcerative colitis. (*Id.*). Dr. Clifton also found that plaintiff was "unable to stand/walk throughout the day due to arthritis/radiculopathy." (*Id.*). Dr. Clifton indicated that these restrictions were permanent. (*Id.*).

On May 1, 2015, plaintiff had a follow-up appointment with Dr. Clifton for treatment of his chronic conditions. (Tr. 535-42). Plaintiff complained of pain in the tendons in his foot and ankle. (*Id.*). He also reported abdominal cramps, diarrhea and rectal bleeding. (*Id.*). Plaintiff complained of continued back pain and stiffness in his joints. (*Id.*). Dr. Clifton renewed plaintiff's various prescription medications for the treatment of his diabetes and joint pain. (*Id.*). Plaintiff had another appointment with Dr. Clifton on July 10, 2015. (Dkt. No. 526-35). Plaintiff reported polyarticular pain that limited his daily functioning and indicated that his joint pain and stiffness worsened throughout the day. (*Id.*). Plaintiff was prescribed, *inter alia*, additional medication for his polyarticular arthritis. (*Id.*).

The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable evidence and is not inconsistent with other substantial evidence in the record." 20 C.F.R. §404.1527(c)(2); *Snell v. Apfel*, 177 F.3d 128, 132-33 (2d Cir. 1999). "When other substantial evidence in the record conflicts with the treating

physician's opinion, however, that opinion will not be deemed controlling…[a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell*, 177 F.3d at 133; *accord* 20 C.F.R. §404.1527(d)(4).  An ALJ is entitled to give greater weight to the opinion of a non-treating physician—and even to disregard the opinion of the treating physician altogether—but only if the ALJ considers the following factors: "(1) the frequency of examination and the length, nature, and extent of the treatment relationship, (2) the evidence supporting the treating physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) any other factors brought to the list that contradict the treating physician's opinion."  *Foxman v. Barnhart*, 157 Fed. Appx. 344, 346-47 (2d Cir. 2005); *accord* 20 C.F.R. §404.1527.  Indeed, the Commissioner is required to explain the weight it gives to the opinions of a treating physician and to provide "good reasons" for not crediting the opinion of a treating physician.  20 C.F.R. §404.1527(c)(2).

Dr. Clifton is a treating physician.  However, in determining plaintiff's RFC, the ALJ does not discuss Dr. Clifton's treatment of plaintiff nor does he specifically discuss Dr. Clifton's findings as to plaintiff's physical limitations.  The ALJ does reference an opinion that plaintiff is moderately limited in his ability to walk, stand, lift, carry, push, pull, and bend and that plaintiff has "unpredictable toileting".[5]  However, the ALJ incorrectly states that these limitations were found by Dr. Jeffrey Grace after he reviewed plaintiff's medical records.[6]  (*Id.*).  Thus, it appears that the ALJ mistakenly attributed some of Dr. Clifton's

---

[5] This opinion is reflected in Dr. Clifton's March 26, 2015 Medical Examination for Employability Assessment.  (Tr. 453-54).

[6] Dr. Jeffrey Grace is a treating psychiatrist who diagnosed plaintiff with depressive disorder and alcohol dependence on August 18, 2014.  (Tr. 412-13).  Dr. Grace completed a Medical Examination for Employability Assessment on March 10, 2015.  (Tr. 455-56).  Dr. Grace opined that plaintiff was moderately limited in maintaining attention and concentration and functioning in a work setting at a consistent pace.  (*Id.*).  He made no findings as to plaintiff's physical functioning.  (*Id.*).

opinions as to plaintiff's physical abilities to Dr. Grace. As a result of this error, the ALJ does not acknowledge that the opinion that plaintiff has moderate limitations in walking, standing, lifting, carrying, pushing, pulling, bending and climbing, as well as unpredictable toileting, was offered by plaintiff's treating physician, Dr. Clifton.[7] The ALJ then gives little weight to these findings because they are "inconsistent with the record." In doing so, the ALJ fails to evaluate the opinion in accordance with many of the factors required by the treating physician rule. Indeed, the ALJ does not address the length and nature of the treatment relationship, the frequency of examinations, the specialty of the doctor, and the specific evidence supporting or contradicting Dr. Clifton's opinion, other than to state plaintiff could walk with a normal gait. In failing to attribute the moderate limitations assessed by Dr. Clifton as the opinion of a treating physician and then summarily dismissing them as inconsistent with the record, the ALJ failed to comply with the treating physician rule. Thus, remand is warranted. *See Erb v. Colvin*, 14-CV-6258, 2015 U.S. Dist. LEXIS 122873 (WDNY Sept. 15, 2015) (ALJ's statements that the rejected opinion of plaintiff's doctor was "inconsistent with the record as a whole" were too conclusory to constitute a good reason to reject the treating doctor's opinions); *Halloran v. Barnhart*, 362 F. 3d 28 (2d Cir. 2003) (the Second Circuit has instructed that it will "not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and…will continue remanding when…encounter[ing] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

---

[7] It is noted that the ALJ incorrectly states that Dr. Grace offered the opinion "after he reviewed the claimant's medical records." (Tr. 130). Thus, the Court cannot ascertain whether, when weighing the opinion, the ALJ understood that the opinion was offered by a physician who personally examined plaintiff on a number of occasions.

10

Defendant argues that any failure to abide by the treating physician rule was harmless because moderate limitations in plaintiff's ability to walk, carry, push, pull, use his hands and climb is largely consistent with the RFC for a limited range of light work. The Court rejects this argument. Indeed, the RFC indicates that plaintiff can perform light work, which requires lifting of up to twenty pounds at once, the frequent lifting and carrying of up to ten pounds, as well as some pushing and pulling. The RFC places no restrictions on plaintiff's ability to lift, carry, push and pull and indicates that plaintiff can frequently use his hands. In contrast, Dr. Clifton found that plaintiff had moderate limitations in, *inter alia*, lifting, carrying, pushing, pulling and using his hands. Thus, the failure to properly evaluate Dr. Clifton's assessment of plaintiff's moderate limitations is not harmless error. Those limitations were not accounted for in the RFC and, if credited, may likely have resulted in a more restrictive finding. See *Otts v. Colvin*, 15-CV-6731, 2016 U.S. Dist. LEXIS 157211 (WDNY Nov. 11, 2016) (remand warranted where the ALJ did not explain how plaintiff could perform light work despite the fact that a physician opined that plaintiff had "a moderate to marked restriction for lifting, carrying, pushing and pulling"). For these reasons, the matter is remanded to the Commissioner for a re-evaluation of Dr. Clifton's opinion in accordance with 20 C.F.R. §404.1527.

Plaintiff further argues that the ALJ failed to consider the opinion of Kristen Webb, a physician assistant who opined on the severity of his ulcerative colitis. (Dkt. No. 13-1).

On February 11, 2015, plaintiff saw with Kristen Webb, a physician assistant specializing in gastroenterology, for treatment of cirrhosis secondary to hepatitis C and ulcerative colitis. (Dkt. No. 512-17). Plaintiff reported that he had been taking Prednisone, a prescribed medication, due to a recent exacerbation of his ulcerative colitis.

(*Id.*). Webb reviewed plaintiff's symptoms, conducted a physical examination, and discussed his prescription medications. (*Id.*). She instructed plaintiff to continue to taper off his dosage of Prednisone, and to continue taking Penatsa, another prescribed medication, for his ulcerative colitis. (*Id.*). On March 11, 2015, Webb submitted a Medical Examination for Employability Assessment on plaintiff's behalf. (Tr. 451-52). She diagnosed plaintiff with ulcerative colitis, cirrhosis, hepatitis C, diabetes mellitus, and depression. (*Id.*). She noted that plaintiff "may be limited by fatigue, depression, intermittent abdominal pain, diarrhea and rectal bleeding." (*Id.*). She indicated that plaintiff's physical activity, including walking, standing, sitting, lifting, carrying, pushing, pulling and bending, may be limited during exacerbated bouts of ulcerative colitis. (*Id.*). Webb concluded that plaintiff has "multiple comorbidities that limit his ability to maintain employment." (*Id.*).

On April 29, 2015, plaintiff saw Webb again for further follow-up as to his ulcerative colitis and cirrhosis. (*Id.* at 504-11). Plaintiff reported that he was again taking Prednisone because of a recent exacerbation of his ulcerative colitis symptoms, including rectal bleeding. (*Id.*). Plaintiff indicated that he had not noticed any improvement in his condition. (*Id.*). Webb again reviewed plaintiff's symptoms, conducted a physical exam, and discussed his medication and recent bloodwork. (*Id.*). Webb advised plaintiff to have repeat bloodwork in one month and to have a colonoscopy in June. (*Id.*). Plaintiff next treated with Webb on June 3, 2015. (Tr. 499-503). Plaintiff reported that he was having ongoing difficulties with his ulcerative colitis, that he was having three urgent bowel movements per day and that he was experiencing rectal bleeding with each bowel movement. (*Id.*). Webb again reviewed plaintiff's symptoms, conducted a physical

examination, and discussed plaintiff's prescribed medications. (*Id.*). Webb advised plaintiff to use an enema after a bowel movement and to continue his current dose of Prednisone. (*Id.*). She scheduled additional bloodwork and a colonoscopy. (*Id.*).

SSR 06-03p instructs that when evaluating relevant evidence in the record, an ALJ must consider evidence from both "acceptable medical sources", such as physicians, and also "medical sources who are not acceptable medical sources", such as nurse practitioners and physician assistants. SSR 06-03p, 2006 SSR LEXIS 5, *4-5. Indeed, opinions from sources such as physician assistants "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.* at *8. SSR 06-03p directs the ALJ to employ the same factors in evaluating opinions from other sources as are used to evaluate the opinions of acceptable medical sources. *Id.* at *11-12. These factors include: the frequency of treatment, consistency with other evidence in the record, degree of supporting evidence, thoroughness of explanation, and whether the source has an area of expertise. *Id.* In rendering a decision, the ALJ "generally should explain the weight given to opinions from these 'other sources', or otherwise ensure that the discussion of the evidence…allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *15-16. When an ALJ assigns little or no weight to other source opinions, such as those provided by a physician's assistant, those decisions should be explained. *See Sears v. Astrue*, 2:11-CV-138, 2012 U.S. Dist. LEXIS 67686, *9-10 (D. Vt. May 15, 2012).

There is no mention of Webb's treatment of plaintiff or of Webb's assessment of plaintiff's limitations in the ALJ's decision. While the ALJ was free to consider Webb's

13

opinion and decide it was entitled to little or no weight, that determination should have been explained in the manner described above. Indeed, it was error for the ALJ to ignore Webb's opinion entirely. *See Colon v. Astrue*, 11-CV-00210, 2013 U.S. Dist. LEXIS 72311, *23-24 (WDNY April 23, 2013) (finding it was an abuse of discretion for the ALJ to "entirely ignore" the opinion of a vocational rehabilitation counselor and that remand for findings as to the opinion's weight was appropriate); *Nugent v. Colvin*, 12-CV-661, 2013 U.S. Dist. LEXIS 132871, *11-13 (WDNY Sept. 14, 2013) ("[B]ecause it appears from the record that the ALJ ignored the opinion of an [other source], as opposed to determining it should be afforded little to no weight based on the evidence, remand is warranted."); *cf. Bigler v. Astrue*, 10-CV-6325, 2011 U.S. Dist. LEXIS 32524 (WDNY Mar. 28, 2011) (no error where the ALJ considered, discussed, and then discounted opinion of employment specialist). Further, Webb's assessment of plaintiff's work limitations due to ulcerative colitis may have been especially relevant here, since Webb is gastroenterologist specialist and had a treatment relationship with plaintiff. *See Solsbee v. Astrue*, 737 F. Supp. 2d 102, 113-14 (WDNY 2010) (ALJ erred in giving no weight to opinion solely because it was from a chiropractor because the ALJ "must consider all of the available evidence in a claimant's case record" and this was especially true where chiropractor had "special knowledge of [p]laintiff's back, neck, shoulder and ability to function."); *White v. Comm'r of Soc. Sec.*, 302 F. Supp. 2d 170 (WDNY 2004) (ALJ erred in failing to consider reports from a social worker, especially in light of the fact that the social worker had a regular treatment relationship with the plaintiff).

Defendant argues that any failure to consider Webb's opinion was harmless error because Webb's opinion included "no explicit functional limitations at all." The Court

rejects this argument. Webb found that plaintiff had multiple health issues that could affect his ability to work. Especially relevant here are limitations imposed by plaintiff's ulcerative colitis. Webb concluded that plaintiff's work activities may be limited by, *inter alia*, diarrhea and rectal bleeding. The RFC states that plaintiff must have a restroom easily available for use during working hours. Plaintiff maintains that this requirement does not account for the "unpredictability and debilitating nature of plaintiff's ulcerative colitis" and specifically how long plaintiff may be off task or away from his desk. Plaintiff testified that, as a result of his ulcerative colitis, he must use the bathroom multiple times per day at unpredictable times and that if he is "not near the toilet quick enough [he will] end up with an underwear full of blood." (Tr. at 183), He testified that he has a difficult time controlling his bowel movements and must be in the bathroom "in a minute's time." (Tr. 160), Plaintiff further explained that his colitis prevented him from continuing his prior work as a salesman because he needed to be "close to a bathroom at all times." (*Id.*), Webb's opinion and treatment records are consistent with plaintiff's testimony. Not only does Webb opine as to the severity of plaintiff's condition generally, but she also finds that plaintiff's physical activities, such as sitting, standing, walking, lifting and carrying, may be limited during exacerbated bouts of ulcerative colitis. If credited by the ALJ, Webb's opinion as to the severity of plaintiff's ulcerative colitis may have resulted in a more restrictive RFC. Thus, the ALJ's failure to consider Webb's opinion is another basis for remand. On remand, the Commissioner should also make findings as to what weight, if any, should be given to Webb's assessment.

Lastly, plaintiff argues that: (1) the ALJ erred by rejecting an opinion by Dr. Simarjit Sidhu; (2) there was insufficient evidence to support the RFC; and (3) the ALJ's credibility

assessment was not supported by the record. (Dkt. No. 13-1) In light of the determination to remand this matter for further proceedings, the Court declines to reach these arguments. Instead, the Commissioner is instructed to reconsider these findings in light of the record as a whole following remand. *See Lloyd v. Colvin*, 15-CV-248, 2016 U.S. Dist. LEXIS 94034, *12, n. 3 (WDNY July 19, 2016) (where the matter was remanded on the basis of the ALJ's error in evaluating a treating physician's opinion, the court declined to reach plaintiff's argument about weight given to another doctor's opinion); *Erb v. Commissioner of Social Security*, 14-CV-6258, 2015 U.S. Dist. LEXIS 122873 (WDNY Sept. 15, 2015) ("In light of my determination that the ALJ erred in evaluating the opinion of [plaintiff's] treating physician, thus warranting remand, I decline to evaluate whether the ALJ erred in assessing plaintiff's RFC or credibility."); *Norman v. Astrue*, 912 F. Supp. 2d 33, 85 n. 79 (SDNY 2012) ("[b]ecause I find that remand is proper on the basis of the ALJ's failure to properly develop the record and to properly apply the treating physician rule, I do not reach plaintiff's arguments with respect to (1) the ALJ's determination of his RFC at step four and (2) whether the ALJ carried his burden at step five of the analysis…[t]he aforementioned legal errors cause the remaining portions of the ALJ's analysis to be inherently flawed."),

## **CONCLUSION**

For the foregoing reasons, plaintiff David G. Thompson's motion for judgment on the pleadings (Dkt. No. 13) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

16

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:	December 27, 2018
	Buffalo, New York


*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge